IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MYRISSA N. ROLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13-CV-548 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Myrissa N. Rollins ("Rollins") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Rollins alleges that the ALJ improperly weighed the opinion of a consulting physician and improperly discredited her testimony. Rollins also submitted additional evidence to the court that she argues warrants a remand of the case under sentence six of 42 U.S.C. § 405(g). I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Rollins's Motion for Summary Judgment (Dkt. No. 16), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 20.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rollins failed to demonstrate that she was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Rollins filed for SSI and DIB on January 20, 2010, claiming that her disability began on January 1, 2009, which she later amended to May 21, 2010. R. 11, 226–40. Rollins was insured for benefits through December 31, 2012 (R. 11); thus, she must show that her disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 68–119. ALJ Robert S. Habermann held two hearings to consider Rollins's disability claim in March and July of 2012. R. 26–46. Rollins was represented by an attorney at the hearings, which included testimony from Rollins and vocational experts James Williams and Leah Perry Salyers. R. 26–46.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

On July 19, 2012, the ALJ entered his decision analyzing Rollins's claim under the familiar five-step process,[2] and denying Rollins's claim for disability. R. 11–20. The ALJ found that Rollins suffered from the severe impairments of degenerative joint disease of the left knee and right ankle, status-post left knee surgery, and status-post right ankle fracture. R. 13. The ALJ further found that Rollins retained the RFC to perform a limited range of sedentary work. Specifically, the ALJ determined that Rollins was capable of carrying up to 10 pounds frequently and 20 pounds occasionally; ambulating 100 feet without a cane; carrying small objects; frequently reaching, handling, feeling, fingering, pushing, and pulling; occasionally reaching overhead and operating foot controls; occasionally stooping, balancing, climbing ramps and stairs; and never kneeling, crawling, crouching, or climbing ladders, ropes or scaffolds. R. 14. The ALJ determined that Rollins could return to her past relevant work as a telemarketer; thus, the ALJ concluded that Rollins was not disabled. R. 19–20. On September 21, 2013, the Appeals Council affirmed the ALJ's decision (R. 1–3), and this appeal followed.

## ANALYSIS

Rollins argues that the RFC assessed by the ALJ is not supported by substantial evidence for several reasons. Rollins's main argument appears to be that the ALJ erroneously based his decision on the fact that Rollins sought no additional treatment for her left knee since February 2012, and thus her condition must have improved. Rollins submitted additional evidence to this court which reflects that she continued to seek treatment for her left knee after the relevant

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

period. Rollins asserts that this new evidence undermines the ALJ's conclusion that her problems resolved after February 2012, and contradicts his determination that she is not disabled. Rollins also asserts that the additional evidence submitted to the court warrants a remand of this case under sentence six of 42 U.S.C. § 405(g). Having reviewed the record as a whole, and for the reasons stated below, I find that the ALJ's decision is supported by substantial evidence and should be affirmed.

Rollins is 38 years old, attended several years of college but did not obtain a degree. R. 50–51. Rollins last worked as a telemarketer until August 2008, when she was laid off. R. 15. On April 7, 2010, consultative examiner William Humphries, M.D., examined Rollins at the request of the Commissioner. R. 344–49. Rollins reported to Dr. Humphries that she had severe pain in her left knee since 2003, when she fell down three flights of stairs. R. 344. She underwent arthroscopic repair of the knee at that time, but had been unable to completely extend her left knee since the surgery and continued to have severe pain. Rollins reported that her knee pain was worse with prolonged standing or walking. On examination, Rollins had full range of motion in her bilateral upper extremities and her right lower extremity, and reduced range of motion in her left hip and knee. R. 346. Rollins's gait was moderately antalgic on the left and she had difficulty heel walking on the left due to knee discomfort. R. 346. An x-ray of Rollins's left knee was normal. R. 350. Dr. Humphries diagnosed posttraumatic degenerative joint disease of the left knee, and concluded that Rollins was capable of sitting six hours in an eight-hour workday, standing and walking two hours in an eight-hour workday, lifting 25 pounds occasionally and 10 pounds frequently. Dr. Humphries recommended no climbing, kneeling or crawling, but no restriction on Rollins's stooping or crouching. He also recommended that Rollins avoid heights and hazards. R. 347.

4

On April 8, 2010, state agency medical expert Richard Surrusco, M.D., reviewed Rollins's file and determined that she was capable of standing/walking for 4 hours in an 8 hour workday, sitting for 6 hours in an 8 hour workday, occasionally performing foot controls with her left leg, climbing ramps and stairs, stooping, kneeling and crouching; never crawling or climbing ladders, ropes or scaffolds; frequently balancing; and must avoid concentrated exposure to work hazards. R. 82–83.

On June 20, 2010, Rollins fell and fractured her right ankle. R. 351–53. On June 24, 2010, Rollins underwent an open reduction and internal fixation of her right ankle fracture. R. 524–25. James Lovelace, M.D. performed the procedure, and provided follow up treatment. R. 368–81. In July 2010, Dr. Lovelace prescribed a walker for Rollins to use to "be mobile in and outside of home." R. 521. On August 4, 2010, Dr. Lovelace noted that Rollins's right ankle wounds were well healed. R. 369. A few weeks later, Rollins's physical therapist noted that Rollins had attended four appointments, her range of motion is increasing and she continues to wear her boot on a constant basis. R. 520. On September 1, 2010, Dr. Lovelace noted that physical therapy was causing Rollins some pain. R. 368. On October 12, 2010, Rollins's physical therapist reported that Rollins was not using her boot and had an abnormal gait pattern. R. 517. Rollins did not appear for her physical therapy appointments after October 2010, and her therapists discharged her from care. R. 515. Rollins continued to complain to Dr. Lovelace of constant pain and instability in her right ankle through February 2011. R. 368–73, 512–14.

State agency medical expert Michael Hartman, M.D. reviewed Dr. Surrusco's findings in October 2010, and concurred with the findings, with an added limitation to occasional foot controls with both feet. R. 106–07.

5

On June 24, 2011, Rollins visited Jeffrey Chain, M.D., with complaints of left knee pain. Dr. Chain noted that Rollins had a prior medial meniscus repair performed in 2003, and complains of persistent swelling, pain and giving way since that time. On examination, Rollins exhibited pain with range of motion of her left knee, and had diffuse tenderness about the left knee, but no soft tissue swelling, ecchymosis or redness. R. 415. Dr. Chain diagnosed mild degenerative arthritis of the left knee with chronic persistent left knee pain and persistent mechanical symptoms. An MRI of the left knee taken on June 30, 2011, showed a chronic tear of the ACL, a possible tear of the lateral meniscus and mild degenerative arthritic changes. R. 564–65. Dr. Chain noted his reluctance to recommend ACL reconstruction due to significant pain complaints which "do not follow a typical pattern for [Rollins's] MRI and physical findings." R. 414. Dr. Chain prescribed Mobic for pain and physical therapy. R. 414. On August 16, 2011, Rollins followed up with Dr. Chain and reported that she did not have the Mobic prescription filled, but had been attending physical therapy. Rollins declined an intra-articular injection, and agreed to continue physical therapy. R. 413.

Rollins attended physical therapy in August and September 2011. R. 527–52. Rollins was initially assessed as "severely debilitated for her age secondary to weakness, pain, lack of balance and difficulty with gait and transfers." R. 529. However, the physical therapist found that Rollins was an "excellent rehabilitation candidate overall." R. 529. Rollins was compliant with therapy, and displayed steady progress. R. 529–551. On September 20, 2011, the physical therapist noted that Rollins had an overall improved gait pattern, increased eccentric left quad control, improved end range knee extension, no buckling present in her left knee during exercise, and no complaints of increased pain in her left knee post treatment. R. 551. The therapist noted that Rollins "has more function of her left leg however is limited by pain 7-8/10 most of the

6

time. She is determined to work through the pain." R. 551. On September 27, 2011, Rollins returned to Dr. Chain and reported persistent unchanged symptoms, despite attending physical therapy and taking Mobic. Dr. Chain stated that "the patient's symptoms continue to exceed the findings on her physical exam. She is difficult to exam and because she does not want to range the knee." R. 412.

On December 19, 2011, Rollins visited Kenneth Gray, M.D., for a reevaluation of her left knee. R. 408. Rollins stated that her knee felt worse and Mobic did not help the pain. R. 408. Dr. Gray found tenderness over Rollins's medial joint line, and noted that his exam was not particularly helpful. He felt that Rollins was not a good candidate for arthroscopic repair, and recommended an arthroscopic debridement. R. 408. Dr. Gray also noted that Rollins was doing minimal exercises and needed to get her strength back in her knee with or without surgery. R. 408. On February 9, 2012, Rollins underwent an arthroscopic surgery to debride the meniscus tear. R. 570–72. Rollins tolerated the procedure well, and at her follow up appointment noted that her knee was healing well, she had significantly weak quadriceps, and still used a walker. R. 574. Rollins complained of pain and stated that Ultram was ineffective, and Dr. Gray prescribed physical therapy to improve her range of motion. R. 574.

On March 20, 2012, Robert Stephenson, M.D., performed a consultative examination of Rollins at the request of her attorney. R. 581–84. Rollins reported that she had persistent pain and stiffness in her left knee following the surgery in February 2012, with no overall improvement. Rollins also complained about persistent right ankle problems, with continued weakness, pain and occasional giving way. R. 581. Rollins reported using a cane in her left hand due to her left knee and right ankle pain and instability. R. 581. Dr. Stephenson's impression was chronic left knee pain and stiffness related to degenerative arthritis, chronic anterior cruciate

7

ligament insufficiency and weakness of left quadriceps muscles. Dr. Stephenson also noted that the cause of Rollins's chronic right ankle pain is unclear, since she had good range of motion, strength and function of the right ankle. R. 583. Dr. Stephenson concluded that Rollins was capable of standing/walking 1–2 hours per day with the use of a cane; sitting 5–6 hours in an eight hour workday; lifting 10 pounds frequently and 20 pounds occasionally. R. 583–84. Dr. Stephenson found that Rollins cannot squat, bend, stoop, or crouch; but has no limitation on her use of upper extremities. Rollins should also avoid ladders, repetitive stair climbing and exposure to unprotected heights. R. 584. Dr. Stephenson noted that although Rollins required a cane for stabilization, she "appears to be overly dependent on the use of the cane and with further rehabilitation of the left knee for range of motion and strengthening, I feel that the patient's dependency and use of the cane could be decreased." R. 583–84. Three months later, upon a request for further clarification from Rollins's attorney, Dr. Stephenson clarified that Rollins would be limited to 1 hour of standing/walking and 5 hours of sitting for two thirds of the month. R. 595.

On April 23, 2012, Thomas Scott, M.D., reviewed Rollins's records and determined that she could lift 10 pounds frequently and 20 pounds occasionally, sit for 6 hours in an 8 hour workday; stand/walk for 2 hours in an 8 hour workday; sit for 3 hours at a time and stand/walk for 1 hour at a time due to left knee irritability and right ankle fracture. R. 587. Dr. Scott found that Rollins needed a cane to ambulate 100 feet, could occasionally perform foot controls; could occasionally climb ramps and stairs; and never climb ladders, scaffolds, balance, stoop, kneel, crouch or crawl. R. 587–88.

In his decision, the ALJ considered all of Rollins's relevant medical evidence in accordance with the regulations, and determined the appropriate weight to give each opinion.

8

R. 11–20. The ALJ gave the opinions of the state agency reviewing physicians some weight "in as far as they are consistent with the RFC." R. 18. The ALJ gave the opinions of Drs. Humphries, Stephenson and Scott some weight because they are somewhat consistent with the medical evidence. R. 18. The ALJ gave Dr. Scott's opinion more weight than Dr. Stephenson's, finding it more consistent with the medical evidence of record, and noting that Dr. Stephenson examined Rollins only once, and his examination was shortly after her February surgery. The ALJ also explained that some of the limitations placed by Dr. Stephenson were not supported by the record. Specifically, the ALJ did not see cause for Dr. Stephenson's finding that Rollins is limited to sitting for 5 hours in an 8 hour workday, when she had no trouble sitting and no objective signs of low back pain or other symptoms that would limit sitting. R. 18. The ALJ also found Dr. Stephenson's opinion that Rollins is limited to standing and walking for 1 hour a day to be unsupported by the medical record because Rollins's ability to stand and walk improved with physical therapy, and because Rollins did not seek treatment for her knee after February 2012. R. 18.

### Consultative Physician's Opinion

Rollins argues that the ALJ's decision to give the opinion of Dr. Stephenson less weight than Dr. Scott is erroneous. Rollins specifically takes issue with the ALJ's reliance upon her failure to seek additional treatment after February 2012. Rollins submitted additional records to the court reflecting that she did continue to seek treatment for her left knee after the relevant period. Rollins also notes that typically the opinion of a consultative physician such as Dr. Stephenson should be given more weight than the opinion of a reviewing physician like Dr. Scott.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. 20 C.F.R. § 416.927(c). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

The regulations provide that the opinion of a consultative examiner is generally given more weight than a medical source that has not examined the claimant. 20 C.F.R. § 416.927(c)(1). However, the ALJ must weigh several factors when evaluating a consultative opinion, such as whether relevant medical evidence supports the opinion, how well explained the opinion is, how consistent the opinion is with the record as a whole, and whether the opinion is from a specialist in the relevant field. 20 C.F.R. § 416.927(c)(3–6). Ultimately, the ALJ must consider the opinions received in light of the evidence of record and the ALJ must determine whether the record supports the opinions offered. While an examiner's opinion is generally accorded more weight than a non-examiner's opinion, if an "opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 385, 590) (4th Cir. 1996)).

Here, the ALJ sufficiently explained the basis for his decision to give Dr. Scott's opinion more weight than Dr. Stephenson's, and his decision is supported by substantial evidence. The ALJ reviewed Rollins's medical history and treatment notes in detail. The ALJ found Dr. Scott's opinion to be more consistent with the record than Dr. Stephenson's, and referred to several specific limitations recommended by Dr. Stephenson that were contradicted by the record. R. 18.

10

The ALJ noted that Rollins did not complain of any issues with sitting or have any objective signs of symptoms that would limit her ability to sit, and yet Dr. Stephenson restricted Rollins to sitting only 5 hours in an 8 hour day. All other reviewing and examining physicians found that Rollins could sit for 6 hours in an 8 hour day. R. 82, 111, 347, 587. Likewise, Dr. Stephenson's finding that Rollins can only stand and walk for 1 hour was contradicted by the opinions of all other reviewing and examining physicians that Rollins could stand for at least 2 hours in an 8 hour workday. R. 82, 106, 347, 587. The ALJ also noted that Dr. Stephenson examined Rollins shortly after her knee surgery, and found that Rollins had no instability or imbalance and was overly dependent on her cane. R. 583–84.

The ALJ's statement that Rollins failed to seek additional treatment for her knee after February 2012 was correct, given the record before the ALJ at the time of his decision. In fact, Rollins did not seek additional treatment for her left knee until August 2012, approximately six months later. The fact that Rollins submitted records to this court reflecting that she sought treatment for her left knee after the ALJ's decision does not undermine the ALJ's decision to give Dr. Stephenson's opinion less weight. As discussed in more detail below, this additional treatment was received after the ALJ's decision, and is unlikely to have any effect on the ALJ's conclusion. Further, Rollins's failure to seek additional treatment was only one basis upon which the ALJ discounted Dr. Stephenson's opinion, and does not deprive the ALJ's decision of support in the record. I find substantial evidence in the record to support the ALJ's decision to give Dr. Scott's opinion more weight than Dr. Stephenson's and find that Rollins is capable of performing a limited range of sedentary work.

The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of

11

disability. The standard is whether the ALJ's decision is supported by substantial evidence, which is more than a scintilla and less than a preponderance. There may be a myriad of possible decisions in any one case that are supported by substantial evidence. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinions of Dr. Stephenson less weight than Dr. Scott, and recommend that it be affirmed.

### **Credibility**

Rollins also argues that the ALJ erroneously discounted her credibility on the basis that she failed to seek additional treatment for her left knee after February 2012. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). At the administrative hearing, Rollins stated that she suffers from constant pain in her right ankle and left knee, which prevents her from focusing and requires that she lie down for at least two hours a day. R. 39, 41. Rollins also testified that her knee gives out occasionally when she stands and her legs cramp when she sits. R. 41.

Rollins's subjective complaints of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Rollins met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of Rollins's symptoms and the affect those disabling conditions have on Rollins's ability to work. Id. at 594–95. In this case, the ALJ recognized that Rollins suffers from severe impairments that cause her to experience pain. As the ALJ noted in his opinion, the issue is not whether Rollins has pain, but whether that pain is so severe as to be disabling. The ALJ found that Rollins's

12

statements regarding disabling pain are not entirely credible and are not supported by the degree of medical treatment she received, the findings made on examination, and the reports of the reviewing and treating physicians in the record. The ALJ analyzed Rollins's medical treatment in detail to arrive at his conclusion that her claim of disabling pain was not consistent with other objective records.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). After a review of the record as a whole, I find that substantial evidence supports the ALJ's determination that Rollins's testimony regarding her disabling pain is only partially credible, and that Rollins is capable of performing a limited range of sedentary work.

The record reflects that Rollins stopped seeking treatment for her right ankle in 2011. In March 2012, Dr. Stephenson noted that the cause of Rollins's continued complaints of ankle instability is unclear, since she had a good range of motion, good strength and good function of the right ankle on examination. R. 583.

The record also reflects that Rollins's subjective complaints about her left knee generally did not match her objective findings. Dr. Chain noted on several occasions that Rollins's symptoms failed to match her objective findings, and Dr. Stephenson found that Rollins was overly dependent on her cane. R. 412, 414, 557, 561, 583.

Additionally, Rollins was not entirely compliant with the treatment recommendations of her physicians during the relevant period. Rollins did not fill prescriptions for pain medication

13

when prescribed; she failed to perform strengthening exercises as requested by her physical therapist; and was discharged from physical therapy for failing to attend her appointments. R. 413, 515, 517.

The ALJ does not assert that Rollins is pain free. On the contrary, the ALJ recognizes that Rollins suffers from severe conditions that limit her ability to function. The issue, however, is not whether Rollins has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent her from performing the sedentary jobs identified by the vocational expert. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). Although Rollins continued to complain of left knee pain throughout the relevant period, the records do not support limitations arising from that pain that would prevent Rollins from performing a range of sedentary work.

### Additional Evidence

Rollins also submitted additional evidence to the court, dated after the ALJ's decision, to demonstrate that she continued to seek medical treatment for her knee pain. Rollins submits that this evidence contradicts the ALJ's assertion in his decision that she "did not return for more treatment or follow-ups for her knee after February 2012" (R. 18), and thus undermines the ALJ's RFC and warrants a remand under sentence six of 42 U.S.C. § 405(g).

Sentence six authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir.1985), superseded by amendment to statute, 42 U.S.C. § 405(g), as recognized

in <u>Wilkins v. Sec'y, Dep't of Health & Human Servs.</u>, 925 F.2d 769, 774 (4th Cir. 1991). Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council.

In <u>Borders</u>, the Fourth Circuit held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met. <u>Borders</u>, 777 F.2d at 955. First, the evidence must relate back to the time the application was first filed, and it must be new, in that it cannot be merely cumulative. <u>Id.</u>; <u>see</u> <u>also</u> <u>Wilkins v. Sec'y, Dep't Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir.1991). Second, the evidence must also be material to the extent that the disability decision might reasonably have been different had the new evidence been before the ALJ. <u>Borders</u>, 777 F.2d at 955. Third, there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner. <u>Id</u>. Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence. <u>Id</u>. <u>See</u> <u>Edwards v. Astrue</u>, No. CIV.A. 7:07CV00048, 2008 WL 474128, at *8 (W.D. Va. Feb. 20, 2008).

Here, the additional records submitted to the court constitute new evidence. There was good cause for Rollins's failure to incorporate this evidence into the record during the proceedings before the ALJ, as much of the evidence did not exist until after the ALJ's decision. These new records are not material, however, because they do not relate to the time period before the Commissioner in this action, and thus there is no reasonable possibility that they would have changed the Commissioner's decision.

The additional evidence reflects that Rollins visited Marc S. Siegel, M.D., on August 13, 2012, complaining of left knee problems, trouble walking and pain. Dkt. No. 17-1, p. 1. A physical examination revealed no effusion in the knee and normal alignment, and tenderness.

15

Dr. Siegel's impression was an ACL tear in the left knee, for which he did not recommend surgery. Dr. Siegel recommended that Rollins continue treatment with Dr. Gray and use a knee brace. Dkt. No. 17-1, p. 1. Eight months later, on April 19, 2013, Rollins visited Shelby Jarrell, M.D., for an evaluation of her left knee. Rollins's primary complaint was giving way and instability of the knee and retropatellar pain. Dkt. No. 17-1, p. 2. Rollins reported that "nothing has made it better since the surgery." Dkt. No. 17-1, p. 2. Dr. Jarrell diagnosed left knee pain, instability and giving way coming from Rollins's ACL. Dr. Jarrell recommended physical therapy and anti-inflammatories to get Rollins's range of motion back, and a future ACL allograft. Dkt. No. 17-1, p. 3.

Rollins returned to see Dr. Jarrell on May 24, 2013, complaining that physical therapy did not help her much, although her range of motion has improved. Dkt. No. 17-1, p. 4. Rollins noted that her biggest complaint was giving way and locking of her knee when she rotates or pivots on it. Dr. Jarrell discussed performing an ACL allograft, but warned Rollins that it may not resolve her pain. Dkt. No. 17-1, p. 5. Rollins underwent the ACL allograft on June 4, 2013. Dkt. No. 17-1, p. 6–8.

Rollins followed up with Dr. Jarrell post-surgery from June through October 2013. Dkt. No. 17-1, p. 9–13. By October, Rollins reported that her knee stability improved dramatically, although she continued to have the preexisting knee pain. Dkt. N. 17-1, pg. 13. At the time she concluded physical therapy, Rollins had a full range of motion without crepitus. Dkt. No. 17-1, p. 12.

The evidence submitted to the court for consideration by Rollins does not meet the standard outlined in Borders and thus, a remand is not warranted in this case. Rollins has the burden of demonstrating that a remand is appropriate given any new and material evidence.

16

Meadows v. Astrue, Civ. Action No. 5:08cv01129, 2010 WL 1380117, at *3 (S.D.W. Va. Mar. 31, 2010). Rollins argues that the additional treatment received for her left knee demonstrates that her knee did not heal after the February 2012 surgery, and thus contradicts the ALJ's RFC determination. The Commissioner argues that the new evidence does not relate back to the relevant period, but rather provides evidence of the continuation and deterioration of Rollins's left knee condition subsequent to the ALJ's decision.

I agree with the Commissioner. Having reviewed the new records submitted to the Appeals Council and to this court, it is clear that they involve the progression of a degenerative condition over a period of time. At the time the ALJ issued his decision, Rollins had not sought additional treatment for her left knee after the February 2012 surgery. Indeed, the records show that she didn't seek additional treatment until six months later, when she complained of pain to Dr. Siegel, who simply recommended that she continue her current treatment and wear a knee brace. It was not until nine months after the ALJ's decision that Rollins visited Dr. Jarrell and a second surgery was recommended.

Additionally, there is no indication that Rollins's additional treatment and surgery relate back to her functional capacity during the relevant period. The ALJ did not expect Rollins to be pain free, and accounted for her knee pain by limiting her to a range of sedentary work. Evidence that Rollins's knee pain continued after the ALJ's decision does not undermine the ALJ's conclusion that the records during the relevant period did not reflect symptoms or pain that precluded Rollins from performing a range of sedentary work. These records simply do not relate back to Rollins's functional limitations during the relevant period.

Further, as discussed above, although the ALJ mentioned Rollins's failure to seek additional treatment after February 2012 in his decision, he did not rely solely upon that factor

when denying her claim. Consequently, there is no reasonable possibility that the new evidence would have changed the outcome of this case, and remand is not warranted for consideration of this evidence under 42 U.S.C. § 405(g).

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Rollins's claim for benefits and in determining that her physical impairments would not significantly limit her ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Rollins's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 10, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge